Louisville, New Orleans & Texas Ry. Co. *v.* J. W. Petty.

1. Master and Servant. *Negligence of fellow-servant.*

    A master is not liable to a servant for an injury caused by the negligence of a fellow-servant engaged in the common employment, it not being made to appear that the master was at fault as to the selection or retention of the servant, who was negligent. *R. R. Co.* v. *Hughes,* 49 Miss. 258; *Howd* v. *R. R. Co.,* 50 Ib. 178, cited.

2. Same. *Railroads. " Hostler" and brakeman fellow-servants.*

    A yard engineer or "hostler," whose duty it is to supply a locomotive with fuel, water, sand and other things, before it starts on the road, and the engineer who runs the locomotive are fellow-servants with a brakeman on the train drawn by such engine; and if, on the run, an accident occurs by reason of the want of sand in sufficient quantity in the sand-box on the locomotive, whereby the brakeman is injured, the railroad company is not liable therefor.

From the circuit court of Wilkinson county.

Hon. Ralph North, Judge.

Appellee, Petty, a brakeman in the employ of the Louisville, New Orleans & Texas Railway Company, brought this suit in the court below, to recover of said company damages for an injury received by him while in the discharge of his duties as brakeman on a south bound freight train November 8, 1888. The injury occurred about sixty miles south of Vicksburg, between that place and Wilson, La., at a point where there is quite a heavy grade. The testimony shows that there was difficulty in getting over this grade, and the engine was slipping and jerking. Appellee was on top of the cars and attempted to set some of the brakes, to prevent the train from running back. Just as he took hold of a brake, the engine gave a jerk, the coupling of one of the cars gave way, and

the train broke in two. The sudden movement thus caused, threw the appellee to the ground, and he was seriously injured. It was shown that the slipping and jerking was caused by the want of a sufficient quantity of sand in the sand-box on the engine. As the engineer was unable to sand the track, the driving wheels of the locomotive would at times revolve on the track without moving the train.

At Vicksburg on the line of this road the company has shops, and a round-house, where trains exchanged engines. The shops and round-house were under the general supervision of a master mechanic. It was shown that there was a yard engineer or "hostler," whose duty it was to take care of the engines in the round-house, supply them with fuel, water, sand and other needed things; and when a train would come in and disengage its engine, he would take out a locomotive supplied with all the necessary equipments for a run, and attach it to the train, at which time the road engineer would take charge of it. It does not distinctly appear who was at fault for the want of sand on the engine when this accident occurred, but it was shown that the engineer complained of the want of sand in the box when only about twenty-three miles out from Vicksburg. It was further shown that sand is a necessary thing to be used in running trains, and that it is the duty of the road engineer when he takes charge of a locomotive to see to it that the same is supplied with all necessary things, and if it is not so supplied to report the fact and refuse to go out.

The other facts necessary to an understanding of the case are stated in the opinion of the court.

At the conclusion of the evidence the defendant asked the court to instruct the jury to find in its favor. This was refused. At the instance of plaintiff, the court instructed the jury in effect that it was the duty of the railway company to see that the engine was supplied with sand; that this duty could not be delegated; that the servant whose duty it was to see that the engine was so supplied was as to that an agent of the master, and not a fellow-servant with plaintiff, and that, if the injury was caused by the want of a sufficient supply of sand, the plaintiff was entitled to recover.

Verdict and judgment in favor of plaintiff for $2500. After motion for a new trial overruled, defendant appealed.

*W. P. & J. B. Harris*, for appellant.

It seems a new doctrine that the company is personally present in supplying fuel, water, sand and the like. Whoever may have been at fault, the person was a fellow-servant with the plaintiff, and he cannot recover; he has builded on *sand*.

The master machinist has to do only with the construction and repair of *machinery*. Other servants look after and provide supplies. The company must furnish a safe track, safe cars, and suitable material and supplies: the use of these is committed to servants. It is immaterial that the servants are in different grades and different groups—all are fellow-servants. *Howd* v. *R. R. Co.*, 50 Miss. 178; *R. R. Co.* v. *Hughes*, 49 Ib. 283; *R. R. Co.* v. *Doyle*, 60 Ib. 977; *McMaster* v. *R. R. Co.*, 65 Ib. 265; 46 Mich. 268; 135 Mass. 201; Whittaker's Smith on Neg. 139; Cooley on Torts, 545; 2 Rorer on Railroads, § 830.

It seems like cutting up the doctrine into "fantastic fribbles" to hold the "hostler," and the road engineer vice principals. On this point see Patterson's Accident Law, 300–306. The burden is on plaintiff as to imperfections or insufficiency of machinery and supplies. 2 Rorer on Railroads, §§ 1200, 1201; 22 Ala. 294; 42 Ib. 672. Whether the "hostler" or engineer was a fellow-servant with the plaintiff was a question of law. Therefore the court should have instructed the jury to find for defendant.

*D. C. Bramlett* and *H. C. Capell*, for appellee,

Filed a lengthy brief making the following points :—

1. The verdict of the jury was sustained by the evidence.

2. The injury to plaintiff was the direct result of the failure to have the engine provided with sand.

3. To render the machinery and implements suitable and safe, it is necessary that an engine shall be provided with the requisite amount of sand. These propositions are sustained by the undisputed facts.

4. The only real question is whether the appellee as a servant of

the company is entitled to recover damages for injuries sustained while in the performance of his duty. We maintain that he can. The round-house and shops at Vicksburg are in charge of the master mechanic. The duties of the "hostler" are confined to the yard. He is required to provide the engine with sufficient fuel, sand and the like. The road engineer has nothing to do with this. The master must furnish his servants with sufficient and suitable machinery and appliances to perform the allotted work. *Flike* v. *R. R. Co.*, 53 N. Y. 549, s. c. 13 Am. R. 545; 36 Am. Dec. 286, note; 53 Iowa, 595, s. c. 36 Am. R. 243; 52 Mo. 373, s. c. 14 Am. R. 424; 80 N. Y. 46, s. c. 36 Am. R. 575. We call special attention to the language of the court in the case last cited. The master cannot be exonerated by a delegation to another of the duty imposed. Where there is an attempt to delegate it, the servant to whom the duty is committed stands in the place of the master. We cite also 7 Am. & Eng. Enc. Law, p. 825.

It seems clear from the authorities that the master mechanic and "hostler" were not fellow-servants with the plaintiff. In addition to the above authorities, see *Booth* v. *R. R. Co.*, 73 N. Y. 38, s. c. 29 Am. R. 97, and note, p. 102; *Ford* v. *R. R. Co.*, 110 Mass. 240. A brakeman on a freight train is not a fellow-servant of a master mechanic, and the foreman of the railroad shops. *Cooper* v. *R. R. Co.*, 24 W. Va. 37.

The principle for which we contend is upheld by the reasoning of our court in *R. R. Co.* v. *Hughes*, 49 Miss. 258; *Thomas* v. *R. R. Co.*, 51 Ib. 637; *McMaster* v. *R. R. Co.*, 65 Ib. 264. In these cases the rule is recognized that the master is liable when he has failed to furnish adequate means and material for the work. Under the authorities, the question of defective or insufficient machinery, etc., is one of fact for the jury.

CAMPBELL, J., delivered the opinion of the court.

The evidence tends to show that the injury received by the appellee was caused by the want of sand in sufficient quantity in the sand box on the engine, but there is no evidence how it came about that the supply of sand was insufficient. Whether the engine

was furnished properly, in this respect, at the start, and had exhausted the supply, or started unfurnished, does not appear. If the latter be true, it was because of the failure of duty of that servant of the company whose duty it was to fill the sand box suitably, and for an injury suffered by reason of the negligence of such fellow-servant, the appellee, a brakeman on the train, has no claim on the company, it not being made to appear that it was at fault as to the selection or retention of the servant, or in any other respect as to this service.

No rule of common law is more universally affirmed than *nonliability of the master to one of his servants for an injury caused by the negligence of a fellow-servant engaged in the common service;* and it was distinctly announced in this state, more than sixteen years ago, that all employés of a railroad company engaged in merely operative service connected with the carrying on of the business of running trains are fellow-servants, and that the common employer is not responsible to one of these for injuries caused by the negligence of another. Undoubtedly the " hostler," or yard servant, charged with the duty of supplying the engine before starting it on the road with fuel, water, sand, or other needed thing, is a mere servant, and not the agent or representative of the master, except in that qualified and subordinate sense in which every servant may be said to be ; and, if it be true, which has not yet been affirmed in this state, that certain employés of a railroad company are not fellow-servants of the army of employés, employed in doing the work of carrying on the business, it would yet be true that the appellee and the laborer, whose default is supposed to have led to his hurt, were fellow-servants, and no liability attached to the common master. The rule on this subject, announced in *N. O.*, etc., *R. R.* v. *Hughes*, 49 Miss. 258, decided in 1873, and reaffirmed with emphasis in *Howd* v. *M. C. R. R. Co.*, 50 Miss. 178 (1874), has remained undisturbed by judicial or legislative enactment, and must be regarded as the accepted doctrine in this state ; and we must not be expected to follow the devious ways of those courts which, in bending the rule which all acknowledge, to effect their ideas of justice in particular cases, have well nigh destroyed the

rule itself. This rule, as held in this state, and in several other states of the United States, and in England, is a simple one, just in its principle, politic in its application, because conservative of life and property, and easily understood and applied, while all efforts to vary and qualify it have involved courts undertaking it in endless contradictions and difficulties.

The case was not tried on the principles announced in this opinion, and a new trial must be had.

*Reversed and remanded.*