[Alabama Great Southern R. R. Co. v. Carroll.]

# Alabama Great Southern Rail Road Co. *v.* Carroll.

*Action by Employe for Injuries Sustained in Another State.*

1. *Negligence of fellow-servant not cause of action against master at common-law.*—Under the common-law, both in Alabama and Mississippi, the master is not liable for an injury inflicted through the negligence of a fellow-servant.

2. *Section 2590 of the Code has no extra territorial operation.*—There can be no recovery in Alabama for injuries to the person sustained in another State, unless actionable by the law of the State where received, and this rule is not varied because the negligence which produced the casualty transpired in Alabama, where the common-law liability of the master is modified, nor by the facts that both master and employee reside in this State and services were required of the employee in both States.

3. *Section 2590 imposes no contractual obligations.*—The liability of the employer under Section 2590 of the Code, does not spring from the contract of employment, the only office of which is to establish the relation of master and servant, and it is alone upon the incidents of that relation that the statute operates. Hence, a servant injured in another State by the negligence of a fellow-servant, under such circumstances as would create no right of action against the master in that State, cannot recover against the latter in Alabama, although the contract was entered into and the services partly performed here.

Appeal from City Court of Birmingham.
Tried before Hon. H. A. Sharpe.

J. W. Fewell, and A. G. Smith, for appellant.
That the action is not for breach of contract, nor for breach of duty growing out of contract.—*R. R. Co. v. Doyle*, 60 Miss. 977 ; *A. T. & R. R. v. Moore*, 11 Am. & Eng. R. R. cases 243 ; *LeForest v. Tolman*, 19 Am. Rep. 400 ; *McMaster v. R. R. Co.*, 65 Miss. 264 ; *Davis v. N. Y. R. R.* 143 Mass. 301 ; 33 Kan. 83 ; 98 N. Y. 377 ; 61 Iowa 441 ; 61 Tex. 432 ; 72 Ind. 220 ; 10 Ohio St. 121 ; *E. T. V. & G. Rwy. v. Lewis*, 14 S. W. Rep. 603 ; 23 N. Y. 465 ; 5 Am. & Eng. Encyc. 127 ; 3 *Ib.* 522 ; 10 S. Rep. 661 ; 2 Thomp. on Neg. p. 1282.

Brooks & Brooks, for appellee, as to jurisdiction, cited *Denwick v. R. R. Co.* 103 U. S. 18 ; *Knight v. R. R. Co.* 108 Pa. St. 38 ; Am. Rep. 492 ; *A. G. S. v. Thomas*, 89 Ala. 293.
That the law is part of the contract, *Hanrick v. Andrews*, 9 Port. 9 ; *McDougald v. Rutherford*, 30 Ala. 253 ; *Walker v.*

*Forbes*, 31 Ala. 9; *Broughton v. Bradley*, 36 Ala. 689; *Cubbedge v. Napier*, 62 Ala. 518; 100 U. S. 213; 116 *Ib.* 647; 3 Am. & Eng. Encyc. 545.

McCLELLAN, J.—The plaintiff W. D. Carroll is, and was at the time of entering into the service of the defendant, the Alabama Great Southern Railroad Company, and at the time of being injured in that service, a citizen of Alabama. The defendant is an Alabama corporation operating a railroad extending from Chattanooga in the State of Tennessee through Alabama to Meridian in the State Mississippi. At the time of the casualty complained of, plaintiff was in the service of the defendant in the capacity of brakeman on freight trains running from Birmingham, Alabama, to Meridian, Mississippi, under a contract which was made in the State of Alabama. The injury was caused by the breaking of a link between two cars in a freight train which was proceeding from Birmingham to Meridian. The point at which the link broke and the injury was suffered was in the State of Mississippi. The evidence tended to show that the link which broke was a defective link and that it was in a defective condition when the train left Birmingham. It was shown that this link had come to the defendant's road at Chattanooga, Tennessee, with a car which belonged to and came to that point over a road which was foreign to the A. G. S. road. That at Chattanooga, this foreign car was coupled into a train of the defendant by means of this link, the destination of the car next in rear of it being Birmingham, and the destination of the second car in the rear of it, which belonged to defendant, being Meridian, to which point the foreign car was also bound. At Birmingham the car between this foreign car and the A. G. S. car which were billed to Meridian was cut out, and these two were coupled together by means of the link which had come to the defendant with the foreign car. The evidence went also to show that the defect in this link consisted in or resulted from its having been bent while cold, that this tended to weaken the iron and in this instance had cracked the link somewhat on the outer curve of the bend, and that the link broke at the point of this crack. It was shown to be the duty of certain employees of defendant stationed along its line to inspect the links attached to cars to be put in trains or forming the couplings between cars in trains at Chattanooga, Birmingham, and some points between Birmingham and the place where this link broke, and

[Alabama Great Southern R. R. Co. v. Carroll.]

also that it was the duty of the conductor of freight trains and the other train-men to maintain such inspection as occasion afforded throughout the runs or trips of such trains; and the evidence affords ground for inference that there was a negligent omission on the part of such employees to perform this duty, or if performed, the failure to discover the defect in and to remove this link was the result of negligence.

The foregoing statement of facts, either proved or finding lodgment in the tendencies of the evidence, together with the evidence of the law of Mississippi, as to the master's liability for injuries sustained by an employee in his service, will suffice for the consideration and determination of the question which is of chief importance in this case, namely, whether the defendant is liable at all on the facts presented by this record for an injury sustained by the defendant in the State of Mississippi. The affirmative of this inquiry is sought to be rested and maintained upon two distinct propositions. In the first place, it is insisted that the negligence which one aspect of the evidence tends to establish is that of the defendant in respect of a duty which the law imposes upon the master and which whether performed or undertaken to be performed in the particular instance by the hand of the master or by the hand of one to whom he had delegated its performance is yet to be taken as being performed or attempted to be performed by the master himself, in such sort that the employer is responsible for its misperformance or non-performance whereby injury results to one of his employees under the doctrine of the common-law and wholly irrespective of statutory provisions. These doctrines are presumed, and also shown by the evidence in this case, to obtain in the State of Mississippi; and the defendant being an Alabama corporation it cannot be questioned that an action may be maintained in this State to recover damages for an injury sustained in Mississippi, by one of its servants, if the facts present a good cause of action under the law of that State. It is manifest beyond adverse inference on the evidence, conceding the link, the breaking of which caused the accident, to have been in a defective condition when it came to defendant's road at Chattanooga attached to, and intended to be used in the further transportation, of the foreign car, that it was so used from that point to the place of the accident, that this defective condition of the link was patent to such observation as should have been bestowed upon it and that the defect in it was the proximate cause of the injury to the plaintiff, it

is, we say clear upon every aspect of the testimony, conceding all this to be true, that the use of that link in coupling the foreign car to the defendant's train and also in its use throughout the voyage from Chattanooga into Mississippi was due to the negligence of employees of the defendant who were charged by it with the duty of inspecting the link before and at the time of incorporating the foreign car into this train and at the several points in Alabama where inspectors were stationed as shown by the evidence, and also of the train-men charged with the duty of inspection as the train was en route. There is no pretense that the defendant had not been sufficiently careful in the selection of these inspectors or that they were incompetent. It is not pretended that they were insufficient in number or stationed at points too widely separated along the line. There is no such idea advanced as that the defendant was negligent in the purchasing of links of adequate strength, and supplying them to these inspectors and to trains generally; or that there was any necessity for the continued use of this link upon a discovery of its defective condition; but on the contrary it is affirmatively shown that the defendant purchased and supplied its trains and employees with all necessary links of good quality and perfect condition to be used in its trains, to supply the places of links which became defective from use, and to substitute for defective links coming to this road with foreign cars. The only negligence, in other words and in short, which finds support by direction or inference in any tendency of the evidence, is that of persons whose duty it was to inspect the links of the train, and remove such as were defective and replace them with others which were not defective. This was the negligence not of the master, the defendant, but of fellow-servants of the plaintiff, for which at common-law the defendant is not liable. Thus it is said in McKinney on Fellow-Servants, § 127: "It is a very common thing for train hands to receive injury through the negligence of persons employed by the company to inspect their cars to discover defects and repair them. The weight of authority, perhaps, is to the effect that the negligence of such employees in the performance of such duties cannot be attributed to the company, and it is consequently not liable for it." Citing among other cases *Smith v. Potter*, 46 Mich. 258; s. c. 2 Am. & Eng. R. R. Cas. 140; *Mackin v. Railroad Co.*, 135 Mass. 201; s. c. 15 Am. & Eng. R. R. Cas. 196; *Railroad Co. v. Webb*, 12 Ohio St. 475; *Railroad Co. v. Rice*, 11 So. West Rep. (Ark.) 699; *Kidwell v. Railroad Co.* 3 Wood (U. S.) 313; and our own case

of *Smoot v. Mobile & Montgomery R. R. Co.* 67 Ala. 13; and these and other cases are cited to the same proposition in 7 Am. & En. Encyc. of Law p. 864, *note.*

There are cases which hold to the contrary, but the law is and has long been settled in this State as we have stated it, the case of *Smoot v. Mobile & Montgomery R. R. Co. supra,* being directly in point.—*Mobile & Ohio R. R. Co. v. Thomas,* 42 Ala. 672, 720 *et seq; Mobile & Montgomery Ry. Co. v. Smith,* 59 Ala. 245; *Louisville & Nashville R. R. Co. v. Allen,* 78 Ala. 494.

This being the common-law applicable to the premises as understood and declared in Alabama, it will be presumed in our courts as thus declared to be the common-law of Mississippi, unless the evidence shows a different rule to have been announced by the Supreme Court of the State as being the common-law thereof. The evidence adduced here fails to show any such thing; but to the contrary it is made to appear from the testimony of Judge Arnold and by the decisions of the Supreme Court of Mississippi which were introduced on the trial below that that court is in full accord with this one in this respect. Indeed, if any thing, those decisions go further than this court has ever gone in applying the doctrine of fellow-servants to the exemption of railway companies from liability to one servant for injuries resulting from the negligence of another, holding in one case that a hostler whose only duty it was *to supply an engine* with sufficient sand before turning it over to the engineer to go on the road is a fellow-servant of the engineer for whose negligent failure to supply the same the company would not be liable.—*L. & N. R. R. Co. v. Petty,* 67 Miss. 255; in another, that a section foreman and a laborer working under him were fellow-servants in such sort that their common master would not be liable for the negligence of the former in attempting to repair a fishbar which he ought to have discarded and applied for a new one.—*Lagrave v. Mobile & Ohio R. R. Co.* 67 Miss. 532; and in yet another case, that a section foreman and train-man are fellow-servants in respect of the negligence of the former unknown to the company *in failing to keep the track in repair,* and that an engineer on a passing train who was injured in consequence could not recover against common employer.—*N. O. J. & G. N. R. R. Co. v. Hughes,* 49 Miss. 258; and the doctrine of this case is said by Mr. McKinney to be "substantially the rule recognized by the English common-law decisions." McKinney on Fellow-servants, p. 82 § 29.   See also *McMaster v. Illinois Central R. R. Co.* 65 Miss. 264.

Proceeding therefore on the presumptions we are author-ized to indulge and also on the evidence adduced in this case as to the law of Mississippi in this connection, and upon the testimony most favorable to the plaintiff as to the cause of his injuries, we feel entirely safe in declaring that plaintiff has shown no cause of action under the common-law as it is understood and applied both here and in Mississippi.

It is, however, further contended that the plaintiff, if his evidence be believed, has made out a case for the recovery sought under the Employer's Liability Act of Alabama, it being clearly shown that there is no such, or similar law of force in the State of Mississippi. Considering this position in the abstract, that is dissociated from the facts of this particular case which are supposed to exert an important influence upon it, there can not be two opinions as to its being unsound and untenable. So looked at, we do not un-derstand appellee's counsel even to deny either the prop-osition or its application to this case, that there can be no recovery in one State for injuries to the person sustained in another unless the infliction of the injuries is actionable un-der the law of the State in which they were received. Cer-tainly this is the well established rule of law subject in some jurisdictions to the qualification that the infliction of the in-juries would also support an action in the State where the suit is brought, had they been received within that State, 3 Am. & Eng. Encyc. of Law, pp. 508-9; *Hyde's Admr. v. Wabash, St. Louis & Pacific Ry. Co.* 61 Iowa, 441; *East Tenn. Va. & Ga. R. R. Co. v. Lewis,* 14 S. W. Rep. 603; *Buckles v. Ellers,* 72 Ind. 220; *Willis v. Mo. Pac. Ry. Co.* 61 Texas, 432; *Woodward v. M. S. & N. I. R. R. Co.* 10 Ohio St. 121; *Whitford v. Panama Railroad Co.* 23 N. Y. 465; *Debovois v. N. Y. L. E. & W. R. R. Co.* 98 N. Y. 377; *N. C. & St. L. Ry. Co. v. Foster,* 11 Amer. & Eng. R. R. Cas. 180; 2 Ro-ver on Railroads, p. 1149; *Kahl v. M. & C. R. R. Co.* 95 Ala. 337; *C. St. L. & Mo. R. R. Co. v. Doyle,* 60 Miss. 977; *Davis v. N. Y. & N. E. R. R. Co.* 143 Mass. 301; *LeForest v. Tolman,* 117 Mass. 109; s. c. 19 Amer. Rep. 400; *Lime-killer v. H. & St. J. R. R. Co.* 33 Kan. 83; *The Scotland,* 105 U. S. 24; *The Santa Cruz,* 1 C. Rob. 50; *A. T. & S. F. R. R. Co. v. Moore,* 11 Am. & Eng. R. R. Cas. 243.

But it is claimed that the facts of this case take it out of the general rule which the authorities cited above abun-dantly support, and authorize the courts of Alabama to sub-ject the defendant to the payment of damages under section 2590 of the Code, although the injuries counted on were sus-tained in Mississippi under circumstances which involved no liability on the defendant by the laws of that State,

This insistence is in the first instance based on that aspect of the evidence which goes to show that the negligence which produced the casualty transpired in Alabama, and the theory that wherever the consequence of that negligence manifested itself, a recovery can be had in Alabama. We are referred to no authority in support of this proposition, and exhaustive investigation on our part has failed to disclose any. There are at least two well considered cases against it, one of which involved an effort to recover for personal injuries sustained in Alabama under circumstances which afforded no cause of action in Alabama in the courts of Tennessee *where the causal negligence occurred* and where also had the negligence manifested itself in the results complained of there, the plaintiff would have been entitled to recover. The accident happened on a train going from Nashville to Chattanooga, in Tennessee, on a railway which runs for a comparatively short distance through Alabama. The negligence relied on consisted in the failure of employees of the defendant charged in that behalf to discover and remedy a defective brake before the train left Nashville as well as during its passage through Tennessee. While the train was running through Alabama, a brakeman was killed in consequence of the defect in this brake. All this is precisely on all fours with our case in those of its aspects most favorable to the plaintiff. That plaintiff, the court conceded, would have had a good cause of action under the law of Tennessee, the place of the negligence, if his intestate had been injured within its limits. So here, the plaintiff on one aspect of the evidence would have had a good cause for action in Alabama, the place of the negligence, had he been injured in Alabama. But it was found in that case that the law of Alabama gave no cause of action for the negligent failure to inspect the appliances used in operating a train, but held the brakeman and the inspectors to be fellow-servants in respect thereto, just as here the laws of Mississippi afforded no redress for the consequence of such negligence, though our statutes have since the Tennessee decision provided therefor; and it was held on the authority of *Mobile & Ohio R. R. Co. v. Thomas,* 42 Ala. 672, that there could have been no recovery in Alabama and that of consequence no cause of action existed in Tennessee, the court saying: "There is no question but the laws of Alabama · · · controlled the rights of the parties in this case, and whether there was error in this part of the charge (referring to an instruction as to defendant's liability on the negligence shown) as given, or the refusal of the specific instructions asked for (substantial-

ly that the negligence of a car inspector from which a brakeman suffers injury is no ground for action against their common employer,) depends wholly upon the laws of that State. *Nashville, Chattanooga & St. Louis Ry. Co. v. Foster*, 10 Lea, 352 ; s. c. 11 Amer. & Eng. R. R. Cas. 180.   In the other case the precise point here under consideration was brought before the Supreme Court of Mississippi, in an action instituted in that State sounding in damages for fatal injuries inflicted upon plaintiff's intestate in the State of Tennessee. It was insisted that inasmuch as the death of the deceased resulted from the negligent failure of a train dispatcher in Mississippi to give requisite orders to the trainmen at a certain point in Tennessee, the rights of the parties were determinable by the laws of Mississippi the place of the disastrous negligent omission.   But the court held to the contrary, saying:  "The right of the appellee is determinable by the laws of Tennessee, in which State the killing of her husband occurred.   The view that no recovery could be had here, except for a result traceable to an omission of duty in Mississippi is unfounded.   Physical force proceeding from this State and inflicting injury in another State might give rise to an action in either State, and *vice versa* but the omission of duty in Mississippi cannot transfer a consequence of it manifested physically in another State to Mississippi. The cases of injuries commenced in one jurisdiction 'and completed in another illustrate our views on this subject. The true view is that the legal entity called the corporation is omni-present on its railroad, and the presence or absence of negligence with respect to an occurrence at any point of the line is not to be resolved by the place at which an officer or employe was stationed for duty.   The question is as to duty operating effectually at the place where its alleged failure caused harm to result.   The locality of the collision was in Tennessee.   It was there, if any where, that the company was remiss in duty, for there is where its proper caution should have been used."—*Chicago, St. Louis & New Orleans R. R. Co. v. Doyle*, 60 Miss. 977, 984.   If this doctrine was properly applied to the facts of that case where the act to be performed, the failure to perform which caused the injury, could only be performed at a point in Mississippi and by an employe who was stationed and remained at that place, it would seem to address itself with more force to the case at bar where it appears the corporation was in fact present with the train and with the defective link every inch of the journey from Birmingham to the point of the accident in the person of the conductor and other trainmen who were charg-

ed with the duty all along the line of discovering and removing the unsafe appliances.

The position of the Mississippi court appears to us to be eminently sound in principle and upon logic. It is admitted, or at least cannot be denied, that negligence of duty unproductive of damnifying results will not authorize or support a recovery. Up to the time train passed out of Alabama no injury had resulted. For all tha· occurred in Alabama, therefore, no cause of action whatever arose. The fact which created the right to sue, the injury without which confessedly no action would lie anywhere, transpired in the State of Mississippi. It was in that State, therefore, necessarily that the cause of action, if any, arose; and whether a cause of action arose and existed at all or not must in all reason be determined by the law which obtained at the time and place when and where the fact whi·h is relied on to justify a recovery transpired. Section 2590 of the Code of Alabama had no efficiency beyond the lines of Alabama. It cannot be allowed to operate upon facts occurring in another State so as to evolve out of them rights and liabilities which do not exist under the law of that State which is of course paramount in the premises. Where the facts occur in Alabama and a liability becomes fixed in Alabama, it may be enforced in another State having like enactments, or whose policy is not opposed to the spirit of such enactments, but this is quite a different matter. This is but enforcing the statute upon facts to which it is applicable all of which occur within the territory for the government of which it was enacted. Section 2590 of the Code, in other words is to be interpreted in the light of universally recognized principles of private international or interstate law, as if its operation had been expressly limited to this State and as if its first line read as follows: "When a personal injury is *received in Alabama* by a servant or employee," &c., &c. The negligent infliction of an injury here under statutory circumstances creates a right of action here, which, being transitory, may be enforced in any other State or country the comity of which admits of it; but for an injury inflicted elsewhere than in Alabama our statute gives no right of recovery, and the aggrieved party must look to the local law to ascertain what his rights are. Under that law this plaintiff had no cause of action, as we have seen, and hence he has no rights which our courts can enforce, unless it be upon a consideration to be presently adverted to. We have not been inattentive to the suggestions of counsel in this connection, which are based upon that rule of the statutory and common crim-

inal law under which a murderer is punishable where the
fatal blow is delivered, regardless of the place where
death ensues.—*Green v. State*, 66 Ala. 40. This principle is
patently without application here. There would be some
analogy if the plaintiff had been stricken in Alabama and
suffered in Mississippi, which is not the fact. There is,
however, an analogy which is afforded by the criminal law,
but which points away from the conclusion appellee's coun-
sel desire us to reach. This is found in that well established
doctrine of criminal law, that where the unlawful act is com-
mitted in one jurisdiction or State and takes effect—pro-
duces the result which it is the purpose of the law to pre-
vent, or, it having ensued, punish for—in another jurisdic-
tion or State, the crime is deemed to have been commited
and is punished in that jurisdiction or State in which the
result is manifested, and not where the act was committed.
1 Bish. Cr. Law, § 110 *et seq.;* 1 Bish. Cr. Pro. § 53 *et seq.*

Another consideration—that referred to above—it is in-
sisted, entitles this plaintiff to recover here under the Em-
ployer's Liability Act for an injury inflicted beyond the ter-
ritorial operation of that act. This is claimed upon the
fact that at the time plaintiff was injured he was in the dis-
charge of duties which rested on him by the terms of a
contract between him and defendant which had been entered
into in Alabama, and, hence, was an Alabama contract, in
connection with the facts that plaintiff was and is a citizen
of this State, and the defendant is an Alabama corporation.
These latter facts—of citizenship and domicile respectively
of plaintiff and defendant—are of no importance in this
connection, it seems to us, further than this: they may tend
to show that the contract was made here, which is not con-
troverted, and if the plaintiff has a cause of action at all, he,
by reason of them, may prosecute it in our courts. They
have no bearing on the primary question of existence of a
cause of action, and as that is the question before us, we
need not further advert to the fact of plaintiff's citizenship
or defendant's domicile.

The contract was that plaintiff should serve the defendant
in the capacity of a brakeman on its freight train between
Birmingham, Alabama, and Meridian, Mississippi, and
should receive as compensation a stipulated sum for each
trip from Birmingham to Meridian and return. The theory
is that the Employer's Liability Act became a part of this
contract; that the duties and liabilities which it prescribes
became contractual duties and liabilities, or duties and lia-
bilities springing out of the contract, and that these duties

attended upon the execution whenever its performance was required—in Mississippi as well as in Alabama—and that the liability prescribed for a failure to perform any of such duties attached upon such failure and consequent injury wherever it occurred, and was enforceable here because imposed by an Alabama contract notwithstanding the remission of duty and the resulting injury occurred in Mississippi, under whose laws no liability was incurred by such remission. The argument is that a contract for service is a condition precedent to the application of the statute, and that "as soon as the contract is made the rights and obligations of the parties, under the Employer's Act, became vested and fixed," so that "no subsequent repeal of the law could deprive the injured party of his rights nor discharge the master from his liabilities," &c., &c. If this argument is sound, and it is sound if the duties and liabilities prescribed by the act can be said to be contractual duties and obligations at all, it would lead to conclusions the possibility of which has not hitherto been suggested by any court or law writer, and which, to say the least, would be astounding to the profession. For instance: If the act of 1885 becomes a part of every contract of service entered into since its passage, just "as if such law were in so many words expressly included in the contract as a part thereof," as counsel insist it did, so as to make the liability of the master to pay damages from injuries to a fellow-servant of his negligent employe, a contractual obligation, no reason can be conceived why the law existing in this regard prior to the passage of that act did not become in like manner a part of every contract of service then entered into, so that every such contract would be deemed to contain stipulations for the non-liability of the master for injuries flowing from the negligence of a fellow-servant, and confining the injured servant's right to damage to a claim against his negligent fellow-servant—the former, in other words, agreeing to look alone to the latter. There were many thousands of such contracts existing in this country and England at the time when statutes similar to section 2590 of our Code were enacted, there were indeed many thousands of such contracts existing in Alabama when that section became the law of this State. Each of these contracts, if the position of plaintiff as to our statute being embodied into the terms of his contract so that its duties were contractual duties, and its liabilities contractual obligations to pay money can be maintained, involved the assurances of organic provisions, State and Federal, of the continued non-liability of the master for the

[Alabama Great Southern R. R. Co. v. Carroll.]

negligence of his servants, notwithstanding the passage of such statutes. Yet these statutes were passed, and they have been applied to servants under pre-existing contracts as fully as to servants under subsequent contracts, and there has never been a suggestion even in any part of the common-law world that they were not rightly so applied. If plaintiff's contention is well taken, many a judgment has gone on the rolls in this State, and throughout the country, and has been satisfied, which palpably overrode vested rights without the least suspicion on the part of court or counsel that one of the most familiar ordinances of the fundamental law was being violated. Nay more, another result not heretofore at all contemplated would ensue. Contracts for service partly in Alabama might be now entered into in adjoining States where the common-law rule still obtains, as in Mississippi, for instance, where the servant has no right to recover for the negligence of his fellow, and the assumption of this risk under the law becoming, according to the argument of counsel, a contractual obligation to bear it, such contracts would be good in Alabama and as to servants entering into them, our statute would have no operation even upon negligence and resulting injury within its terms occurring wholly in Alabama. And on the other hand, if this defendant is under a contractual obligation to pay the plaintiff the damages sustained by him because of the injury inflicted in Mississippi, the contract could be of course enforced in Mississippi and damages there awarded by its courts, notwithstanding the law of that State provides that there can be no recovery under any circumstances whatever by one servant for the negligence of his fellow employe. We do not suppose that such a proposition ever has been or ever will be made in the courts of Mississippi. Yet that it should be made and sustained is the natural and necessary sequence of the position advanced in this case. These considerations demonstrate the infirmity of plaintiff's position in this connection, and serve to show the necessity and propriety of the conclusion we propose to announce on this part of the case. That conclusion is, that the duties and liabilities incident to the relation between the plaintiff and the defendant which are involved in this case, are not imposed by and do not rest in or spring from the contract between the parties. The only office of the contract, under section 2590 of the Code, is the establishment of a relation between them, that of master and servant; and it is upon that relation, that incident or consequence of the contract and not upon the rights of the parties under the contract, that our statute operates. The law is not con-

cerned with the contractual stipulations, except in so far as to determine from them that the relation upon which it is to operate exists. Finding this relation the statute imposes certain duties and liabilities on the parties to it wholly regardless of the stipulations of the contract as to the rights of the parties under it, and, it may be, in the teeth of such stipulations. It is the purpose of the statute and must be the limit of its operation to govern persons standing in the relation of master and servants to each other in respect of their conduct in certain particulars within the State of Alabama. Mississippi has the same right to establish governmental rules for such persons within her borders as Alabama; and she has established rules which are different from those of our law. And the conduct of such persons toward each other is, when its legality is brought in question, to be adjudged by the rules of the one or the other States as it falls territorially within the one or the other. The doctrine is like that which prevails in respect of other relations, as that of man and wife. Marriage is a contract. The entering into this contract raises up certain duties and imposes certain liabilities in all civilized countries. What these duties and liabilities are at the place of the contract are determinable by the law of that place; but when the parties go into other jurisdictions, the relation created by the contract under the laws of the place of its execution will be recognized, but the personal duties, obligations and liabilities incident to the relation are such as exist under the law of the jurisdiction in which an act is done or omitted as to the legality, effect or consequence of which the question arises. It might as well be said where there is a marriage in Alabama and the parties remove to Mississippi, and the wife there makes a contract which is void in Mississippi but valid under our statute, and subsequently they return to Alabama, that our courts will enforce that contract, or if such husband while in Mississippi does an act which is innocuous and lawful in that State, but which if done here would entail liability upon him, and the parties afterwards return here, that the liability imposed by our laws could be enforced here, because the parties entered into the contract here, as that a master is liable here for conduct towards his servant which was proper, or at least involved no liabilty, where it took place, simply because the contract which created the relation was entered into in this State. The whole argument is at fault. The only true doctrine is that each sovereignty, state or nation, has the exclusive power to finally determine and declare what acts or

omission in the conduct of one to another, whether they be strangers or sustain relations to each other which the law recognizes, as parent and child, husband and wife, master and servant, and the like, shall impose a liability in damages for the consequent injury, and the courts of no other sovereignty can impute a damnifying quality to an act or omission which afforded no cause of action where it transpired. These propositions find illustration and support in the case of *Whitford v. The Panama R. R. Co.*, 23 N. Y. 465, where the relation involved was that of carrier and passenger, a relation which had been created by a contract made in New York, between a corporation and a citizen thereof for carriage, commencing in that State and ending in San Francisco, via Panama and over the Panama railroad. The passenger was killed through the fault of the corporation's servants while being transported along this railroad. The law of New York gave to the personal representative of a person whose death was caused by the wrongful act or omission of another, a right of action therefor in all cases where the deceased, had the injury fallen short of death, could have recovered. It did not appear that the laws of New Granada where the injury was inflicted, authorized any recovery on the facts alleged and proved. It was urged, as here, that the domicile of the parties and the fact that they contracted in New York took the case out of general rules as to territorial limitations upon the operation of statutes, but the plaintiff was non-suited, it being held in effect that the laws of New Granada were controlling as to the duties and liabilities incident to the relation which existed between them, while the contract of carriage was being performed in that country, and that the carrier so far as care and diligence were concerned owed the passenger no duties there except such as were imposed upon the relation by the local law, and that no liability for negligence and its results not prescribed by that law rested on the company. And the court, *inter alia*, said: "Suppose the government of New Granada to have enacted that the proprietors of a railroad company should not be responsible for the negligence of its servants, provided there was no want of due care in selecting them; it could not be pretended that its will could be set at naught by prosecuting the corporation in the courts of another State where the law was different. . . . The true theory is, that no suit whatever respecting this injury could be sustained in the courts of this State, except pursuant to the law of international comity. By that law foreign contracts and foreign transactions, out of which liabilities have arisen,

[Alabama Great Southern R. R. Co. v. Carroll.]

may be prosecuted in our tribunals by the implied assent of the government of this State; but in all such cases, we administer the foreign law as from the proofs we find it to be, or as without proofs, we presume it to be." So, in the case of *Gray v. Jackson & Co.*, 51 N. H., 9, there was a contract of affreightment by the terms of which goods were to be carried out of one State into and through other States. They were lost in a State other than that in which the contract was made and the carriage commenced. By the law of the place of the contract the carrier was liable for the loss under the circumstances shown in evidence had it occurred in that State. By the law of the State where the loss occurred, however, the carrier was not liable. In an action for the loss *prosecuted in the State of the contract*, the law, not of that State, but of the place of the loss which operated as to the particular transaction on the relation of shipper and carrier and prescribed the duties and liabilities incident to that relation in that State, regardless of the place where the contract creating the relation was entered into, was applied and made to determine the rights of the parties to be other than they were under the law of the place of the contract which was also, as here, the place of the forum.

The foregoing views will suffice to indicate the grounds of our opinion that the rights of this plaintiff are determinable solely by the law of the State of Mississippi, and of our conclusion that upon no aspect or tendency of the evidence as to the circumstances under which the injury was sustained and as to the laws of Mississippi obtaining in the premises was the plaintiff entitled to recover.

The general affirmative charge requested for defendant should have been given. The other very numerous assignments of error need not be considered.

For the error in refusing to instruct the jury to find for the defendant if they believed the evidence, the judgment is reversed and the cause will be remanded.